UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JORGE ALCAREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AKORN, INC., KENNETH S. ABRAMOWITZ, ADRIENNE L. GRAVES, RONALD M. JOHNSON, JOHN N. KAPOOR, STEVEN J. MEYER, TERRY A. RAPPUHN, BRIAN TAMBI, and ALAN WEINSTEIN<br><br>Defendants. | CIVIL ACTION NO. _____<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff Jorge Alcarez ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public stockholders of Akorn, Inc. ("Akorn" or the "Company") against the members of Akorn's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Fresenius Kabi AG ("Fresenius Kabi").

2. On April 24 2017, Fresenius Kabi and the Company announced they had entered into an Agreement and Plan of Merger ("Merger Agreement"), by which Fresenius Kabi, through its wholly owned subsidiary, Quercus Acquisition, Inc., ("Merger Sub"), will acquire all of the

outstanding shares of Akorn in an all-cash transaction in which Akorn stockholders will receive $34.00 per share (the "Proposed Transaction").

3. The Proposed Transaction has a total transaction value of approximately $4.3 billion and is expected to close by early 2018.

4. On May 22, 2017, Akorn filed a preliminary proxy statement on a Schedule 14A (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections, which were prepared by Company management and relied upon by J.P. Morgan Securities LLC ("J.P. Morgan"), the Company's financial advisor, the financial analysis performed by J.P. Morgan to support its opinion on the fairness of the Proposed Transaction, and the background of the Proposed Transaction.

5. Without additional information the Proxy is materially misleading in violation of federal securities laws.

6. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Akorn's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Akorn maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

11. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Akorn.

12. Akorn is a corporation organized and existing under the laws of the State of Louisiana. It maintains principal executive offices at 1925 W. Field Court, Suite 300, Lake Forest, Illinois, 60045.

13. Defendant Kenneth S. Abramowitz ("Abramowitz") has served as a director of the Company since May 2010.

14. Defendant Adrienne L. Graves ("Graves") has served as a director of the Company since March 2012.

15. Defendant Ronald M. Johnson ("Johnson") has served as a director of the Company since May 2003.

16. Defendant John N. Kapoor ("Kapoor") has served as Chairman of the Company's Board since October 1990.

17. Defendant Steven J. Meyer ("Meyer") has served as a director of the Company since June 2009.

18. Defendant Terry A. Rappuhn ("Rappuhn") has served as a director of the Company since April 2015.

19. Defendant Brian Tambi ("Tambi") has served as a director of the Company since June 2009.

20. Defendant Alan Weinstein ("Weinstein") has served as a director of the Company since July 2009.

21. Defendant Raj Rai ("Rai") was appointed Chief Executive Officer ("CEO") in May 2010.

22. Defendants referenced in ¶¶ 13 through 21 are collectively referred to as Individual Defendants.

23. Relevant non-party Fresenius Kabi is a corporation organized and existing under the laws of the Germany. Fresenius Kabi maintains its corporate headquarters at Else-Kröner-Straße 1, 61352 Bad Homburg, Germany.

24. Relevant non-party Merger Sub is a Louisiana corporation and wholly owned subsidiary of Fresenius Kabi that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Akorn common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. The Merger Agreement states that, as of April 21, 2017, there were 124,533,605 shares of common stock outstanding. All members of the Class may be identified from records maintained by Akorn or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27. Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

5

28. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

29. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

### FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background*

31. Akorn is a pharmaceutical company that develops, manufactures, and markets generic and branded prescription pharmaceuticals and over-the-counter consumer and animal health products.

32. The Company specializes in researching and developing alternative dosage forms beyond those in solid oral forms. These alternative forms include oral liquids, injectables, opthalmics, otics, topicals, inhalants, and nasal sprays.

*The Sale Process*

33. The process of selling the Company began in the spring and summer of 2016 when the Company's representatives met with representatives of Company A, Company B, and Company C. These meetings led the Company to believe that none of these companies would be interested in a potential strategic transaction.

34. During a meeting of the Board in July 2016, J.P. Morgan was directed to begin contacting potential partners for strategic alternatives, including financial sponsors.

35. In early October 2016, J.P. Morgan contacted Fresenius Kabi's U.S. offices to evaluate its interest in a strategic transaction.

36. The Company and Fresenius entered into a confidentiality agreement on November 8, 2016.

37. On March 30, 2017, at a meeting to negotiate the terms of Fresenius Kabi's proposal, Fresenius Kabi requested that Defendant Kapoor enter into a voting agreement to commit to vote his shares in favor of a transaction with Fresenius Kabi, and to agree to invest 20% of any proceeds in the ordinary shares of Fresenius Kabi. The Proxy omits whether Defendant Kapoor agreed.

38. Following rounds of increased prices that included contingent value rights ("CVRs"), the company and Fresenius agreed to an acquisition price of $34.00 per share on April 3, 2017.

39. Following lengthy final negotiations, the Board met again on April 24, 2017.

40. After receiving J.P. Morgan's opinion that the merger consideration was financially fair, the Board approved the Proposed Transaction and authorized the execution of the Merger Agreement.

41. Following the meeting, the parties executed the Merger Agreement and other transaction documents.

42. Akorn then issued a press release, reading in relevant part:

> LAKE ZURICH, Ill. and LAKE FOREST, Ill., April 24, 2017 – Fresenius Kabi has agreed to acquire Akorn (NASDAQ: AKRX), a U.S-based manufacturer and marketer of prescription and over-the-counter pharmaceutical products, for approximately $4.3 billion, or $34.00 a share, plus the assumption of approximately $450 million of debt1. The transaction is expected to close by early 2018 and to be accretive in 2018 to Fresenius Group net income and EPS, excluding integration costs.

7

The agreement and transaction have been approved by the boards of both companies and will be recommended by Akorn's board to its shareholders. Akorn's largest shareholder has committed to supporting the transaction. The transaction is subject to approval by Akorn shareholders and other customary closing conditions, including regulatory review under the Hart-Scott-Rodino Antitrust Improvements Act.

"Joining our two companies and product portfolios will strengthen and diversify both businesses," said John Ducker, president and CEO of Fresenius Kabi USA. "Akorn brings to Fresenius Kabi specialized expertise in development, manufacturing and marketing of alternate dosage forms, as well as access to new customer segments like retail, ophthalmology and veterinary practices. Its pipeline is also impressive, with approximately 85 ANDAs filed and pending with the FDA and dozens more in development."

"Fresenius Kabi is an excellent fit for Akorn, strategically and culturally," said Raj Rai, Akorn's Chief Executive Officer. "Fresenius brings to Akorn the strength and resources of a global leader with an experienced U.S. team and an outstanding record of growth and award-winning service in the United States. We look forward to working with Fresenius Kabi on this next phase of our growth. When the transaction closes, we will strive to ensure a smooth transition for our employees and customers."

Akorn also announced today that based on a preliminary review of Q1 results, it is reaffirming its previously announced 2017 guidance, excluding any one-time costs related to the transaction with Fresenius Kabi.

Fresenius Kabi specializes in sterile injectable medicines. Akorn produces a diverse portfolio comprising sterile ophthalmics, topical creams, ointments and gels, oral liquids, otic solutions (for the ear), nasal sprays and respiratory drugs in addition to sterile injectables, which made up just 35% of Akorn sales last year.

Akorn products are sold in retail pharmacies (prescription and over-the-counter) and directly to physician and veterinary distributors, in addition to hospitals and clinics – virtually all in North America. Fresenius Kabi is a global health care company with a worldwide network for pharmaceutical and medical devices R&D, manufacturing, sourcing, sales and supply chain that will be a valuable resource to grow Akorn's portfolio in the U.S. and abroad.

The U.S. headquarters for Akorn and Fresenius Kabi are both in Northern Illinois, located in close proximity. Akorn employs more than 2,000 people worldwide. Fresenius Kabi employs more than 30,000 worldwide.

Fresenius Kabi has a successful track record of growing pharmaceutical acquisitions in the United States. Fresenius Kabi acquired APP Pharmaceuticals

in 2008 and has more than tripled its sales to nearly $2 billion. The company acquired the Simplist™ line of prefilled syringes from BD last year and has already doubled the sales of this portfolio.

Fresenius Kabi's financial advisers for the transaction were Credit Suisse and Moelis, with Allen & Overy acting as its primary legal adviser. J.P. Morgan Securities LLC served as Akorn's financial adviser, and Cravath, Swaine & Moore LLP and Polsinelli PC served as its legal advisers.

*The Materially Misleading and Incomplete Proxy*

43. Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction. The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Misleading Statements and Omissions Regarding the Company's Financial Projections*

44. The Proxy fails to provide material information concerning the Company's financial projections.

45. The Proxy discloses "Financial Forecasts" that the Company provided to the Board and J.P. Morgan during the process leading up to the execution of the Merger Agreement. The items forecasted include Revenues, EBITDA, and Unlevered Free Cash Flow.

46. The Proxy fails to disclose the following Company projections for years 2017 through 2026: (i) stock-based compensation expense; (ii) projected taxes; (iii) capital expenditures; (iv) changes in net working capital; (v) net income; (vi) net interest expense; (vii) income tax expense; (viii) depreciation; (ix) amortization; (x) the line items contained in the "November 2016 Management Case"; and (xi) the "March 2017 Management Case Extrapolations." Without these measures, cherry-picking the disclosed projections materially misleads Akorn stockholders and renders J.P. Morgan's financial analyses meaningless.

9

47. Moreover, the Proxy fails to provide line item metrics used to calculate the non-GAAP measures of EBITDA and Unlevered Free Cash Flows, or otherwise reconcile the non-GAAP projections to GAAP. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and therefore misleading.

48. When a company discloses information in a Proxy that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

49. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders. Recently, former SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Akorn has included in the Proxy), implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

---

[1] Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

50. Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

*Material Omissions Concerning J.P. Morgan's Financial Analyses*

51. The Proxy describes J.P. Morgan's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Akorn's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining how to cast their vote on the Proposed Transaction. This

---

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.
[3] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

omitted information, if disclosed, would significantly alter the total mix of information available to Akorn's stockholders.

52. The Proxy fails to disclose various material elements of the financial analyses performed by J.P. Morgan.

53. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the range of terminal values for the Company; (ii) J.P. Morgan's basis for applying terminal value growth rates ranging from 0.0% to 2.0%; (iii) the inputs underlying the discount rates ranging from 8.0% to 10.0%; and (iv) the Company's projected net debt as of April 21, 2017.

*Potential Conflicts of Interest*

54. The Proxy omits material information regarding potential conflicts of interest faced by the Company's officers and directors.

55. Specifically, the Proxy fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Akorn's officers and directors, including who participated in all such communications.

56. The Proxy also fails to disclose the timing and nature of all communications and discussions pertaining to Defendant Kapoor's opportunity to invest in Fresenius Kabi an opportunity not afforded the public stockholders of Akorn. The Proxy discloses that Fresenius Kabi requested that Defendant Kapoor agree to invest 20% of the proceeds of the sale back into Fresenius Kabi during a meeting on March 20, 2017. Any further discussion of this topic is omitted from the Proxy. This omission includes whether the parties ultimately reached an agreement, and the terms of any such agreement.

57. Without this information, Akorn stockholders have no ability to understand whether Akorn management and directors faced potential conflicts causing them to favor a transaction with Fresenius Kabi over other potential strategic alternatives.

58. The Proxy also omits the potential conflicts of interest faced by Akorn's financial advisor, J.P. Morgan. The Proxy omits whether the $47 million additional "Services Fee" Akorn will pay to J.P. Morgan is contingent (in whole or in part) upon consummation of the Proposed Transaction. The Proxy also omits all services provided by J.P. Morgan to the Company, Fresenius Kabi, and their affiliates in the past two years, as well as the amount of compensation received for such services.

59. Without the material information described above, stockholders cannot make an informed decision whether or not to vote in favor of the Proposed Transaction, and have been harmed thereby. These omissions materially mislead Akorn stockholders as to the as to the accuracy and value of the analyses underlying J.P. Morgan's fairness opinion, and the veracity of the fairness opinion itself.

60. Defendants' failure to provide Akorn's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Proxy takes on actual significance in the minds of Akorn's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

61. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

63. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

64. Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

65. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

66. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a fully informed vote on the Proposed Transaction.

67. Plaintiff and the Class have no adequate remedy at law.

14

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

68. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Akorn within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Akorn, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

70. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

72. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

73. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

75. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B) declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(D) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 7, 2017                                  Respectfully Submitted,

**O'BELL LAW FIRM, LLC**

By: /s/ Eric J. O'Bell
Eric J. O'Bell (#26693)
3500 North Hullen Street
Metairie, LA 70002
(504) 456-8677
(504) 456-8653 facsimile
ejo@OBellLawFirm.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
　　　 etripodi@zlk.com

*Attorneys for Plaintiff*